# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 19, 2021

Lyle W. Cayce
Clerk

No. 20-30233

ALLIANCE FOR GOOD GOVERNMENT,

*Plaintiff—Appellee*,

*versus*

COALITION FOR BETTER GOVERNMENT,

*Defendant—Appellant*,

DARLEEN JACOBS,

*Objecting Party—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-3679

Before HIGGINBOTHAM, SMITH, and DENNIS, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

Coalition for Better Government and Darleen Jacobs challenge the reasonableness of the district court's award of attorney's fees to Alliance for Good Government for federal trademark infringement under the Lanham Act. Jacobs also argues that she was improperly joined post-judgment. We affirm.

No. 20-30233

## I.

Our two prior opinions detail the relevant background.[1] Briefly, Alliance and Coalition are nonprofit organizations that endorse political candidates in New Orleans. In 2017, Alliance sued Coalition, seeking to enjoin use of its trade name (word mark) and logo (composite mark) for federal trademark infringement under the Lanham Act, state trademark infringement, and unfair trade practices. The district court granted Alliance summary judgment on its federal trademark infringement claim, enjoining Coalition from using both its word and composite marks. Alliance voluntarily dismissed its other claims.

Coalition appealed, and we affirmed the district court's summary judgment but modified its injunction to restrain only Coalition's use of its composite mark.[2] While the first appeal was pending, Alliance moved for attorney's fees pursuant to the Lanham Act's fee-shifting provision,[3] and the district court awarded Alliance $68,237.25 in fees.[4] Coalition also appealed the fee award. In our second opinion, we concluded that the district court did not abuse its discretion in classifying this case as an exceptional one, warranting reasonable attorney's fees under the Lanham Act.[5] As Alliance

---

[1] *All. for Good Gov't v. Coal. for Better Gov't* (*Alliance I*), 901 F.3d 498 (5th Cir. 2018); *All. for Good Gov't v. Coal. for Better Gov't* (*Alliance II*), 919 F.3d 291 (5th Cir. 2019).

[2] *Alliance I*, 901 F.3d at 514.

[3] The Lanham Act authorizes the award of "reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a).

[4] *Alliance II*, 919 F.3d at 294. This amount included "fees already incurred and projected fees from replying to Coalition's opposition to the fees motion." *Id.*

[5] *Alliance II*, 919 F.3d at 295. The Appellants attempt to relitigate the issue of whether this case is exceptional in their reply brief. Our prior determination that the district court did not abuse its discretion in finding this case exceptional is law of the case and cannot be challenged in this appeal. *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002), *cert. denied*, 537 U.S. 883 (2002) ("Under the law of the case doctrine, an issue of

No. 20-30233

had not prevailed on its word mark claim, it was not entitled to attorney's fees for work related to that claim, or for the claims it voluntarily dismissed.[6] We remanded, instructing the district court to adjust the fee award to account for claims on which Alliance did not prevail, as best it could in light of our opinion.[7] We made no reference to and did not prohibit awarding additional fees related to the additional litigation of the fee award.

On remand, the district court instructed Alliance to file a new motion for attorney's fees, separating fees in accordance with our judgment and including any demand for fees related to the appeals "not inconsistent with [our] judgment," which had affirmed the exceptional nature of the case. Alliance argued that its work on the word mark claim was "inextricably intertwined with work" on the composite mark claim, so it was unable to fully disentangle fees related to each claim. Instead, it proposed a 10% across-the-board reduction of fees to estimate for time spent on the word mark claim, and a $1,500 reduction to account for the claims it voluntarily dismissed. Alliance also moved to join Darleen Jacobs, a principal of Coalition, because it had learned during post-judgment discovery that Coalition lacked resources to pay the fee award.

The district court joined Jacobs as a third party to the case, required that Alliance serve her with the court's order, and gave Jacobs two weeks to respond to Alliance's motion. Jacobs opposed Alliance's motion for fees, but

---

law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." (citing *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998))). Because we will not reconsider the exceptional nature of this case, it is unnecessary to strike this portion of the Appellants' reply brief as Alliance requests in its motion to strike.

[6] *Alliance II*, 919 F.3d at 298.

[7] *Id.*

No. 20-30233

the district court ultimately found it appropriate to hold her directly liable. The district court agreed with Alliance's efforts to modify the fee award in accordance with our second opinion, rejected Coalition's objections, and awarded Alliance $148,006.15 in fees.

Both Jacobs and Coalition appealed. Jacobs argues that the district court's order joining her was improper. And both challenge the reasonableness of the district court's fee award.

## II.

## A.

As the Supreme Court explained in *Nelson v. Adams USA, Inc.*, a court adding a party post-judgment must afford that party due process.[8] Such process, as reflected in Federal Rules of Civil Procedure 12 and 15, requires an added party have an opportunity to respond to the claims against him.[9] We review the district court's decision to join a party for abuse of discretion.[10]

The facts here mirror those in *Nelson*, with key exceptions. In both cases, the prevailing party was awarded attorney's fees and subsequently sought to join an individual in a leadership role within the opposing party entity out of fears the party itself did not have sufficient assets to pay the fee award.[11] However, in *Nelson*, the district court immediately granted the

---

[8] *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 463 (2000).

[9] *Id.* at 468; *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard." (citation omitted)).

[10] *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010) (per curiam).

[11] *Nelson*, 529 U.S. at 462-63.

prevailing party's motion, making Nelson a party and subjecting him to the fee award.[12] The Supreme Court held that the district court violated due process because it failed to give Nelson "an opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him."[13] The district court here gave Jacobs two weeks to respond to Alliance's motion for attorney's fees after joining her, and she did so. It was only after considering Jacobs's arguments in opposition that the district court found her liable for the fee award. This procedure met the demands of due process.[14]

**B.**

Jacobs next argues that she is not liable as an individual under the Lanham Act.

The Lanham Act authorizes the award of "reasonable attorney fees to the prevailing party" in "exceptional cases."[15] The text of the provision does not expressly limit the persons who can be held liable for attorney's fees. In interpreting the Patent Act's identically worded fee-shifting provision, the Supreme Court explained that the "text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation," which is determining whether the case is exceptional.[16]

---

[12] *Id.* at 463.

[13] *Id.*

[14] Jacobs also argues that *Nelson* requires that the district court join her by means of an amended pleading instead of a motion. However, as the district court correctly noted, it has the authority to join a party "[o]n motion or on its own" at any time. FED. R. CIV. P. 21.

[15] 15 U.S.C. § 1117(a).

[16] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). We have found case law interpreting the Patent Act's fee-shifting provision instructive in interpreting the Lanham Act's identical provision. *See, e.g., Alliance II*, 919 F.3d at 295;

No. 20-30233

The Court gave no indication that the provision limited who could be held liable. Indeed, in *Nelson*, which also concerned attorney's fees under the Patent Act, the Court underscored that its decision to invalidate the manner of Nelson's joinder did "not insulate Nelson from liability."[17]

The Federal Circuit in turn has affirmed imposition of fee awards under the Patent Act against individuals who were not party to the underlying litigation when their conduct contributed to the court's decision to award attorney's fees.[18] The decision to do so stems from the fee-shifting provision's purpose of preventing "gross injustice when a party has litigated vexatiously"[19] and the general principle that "[a]n officer is individually liable for any tortious conduct that he committed in connection with his corporate duties."[20] Given the similar underlying purpose of the Lanham

---

*Baker v. DeShong*, 821 F.3d 620, 623 (5th Cir. 2016) (citing S. Rep. No. 93-1400 (1974)); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992) ("Given the parallel language, we infer that Congress meant courts to apply similar standards in both patent and trade dress cases.").

[17] *Nelson*, 529 U.S. at 472.

[18] *See, e.g.*, *Insituform Tech., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1373 (Fed. Cir. 2004); *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985) ("This court has held that an individual may be assessed fees under [the fee-shifting provision of the Patent Act] if his conduct supports a finding that the case is exceptional." (citing *Hughes v. Novi Am., Inc.*, 724 F.2d 122, 126 (Fed. Cir. 1984))); *see also Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 843 (E.D. Tex. 2017) (holding a non-party liable for attorney's fees under the Patent Act where the non-party was afforded due process, was responsible for the conduct making the case exceptional, and where it was equitable to do so).

[19] *Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 929 F.2d 676, 679 (Fed. Cir. 1991) (internal quotation marks and citation omitted).

[20] *Insituform*, 385 F.3d at 1373 (citing *Walker v. FDIC*, 970 F.2d 114, 122 (5th Cir. 1992)).

No. 20-30233

Act's fee-shifting provision,[21] we find it reasonable to likewise impose liability for a Lanham Act fee award on a properly-added party responsible for the conduct making a case exceptional.

We affirmed the district court's determination that this case is exceptional because Coalition litigated in an unreasonable manner, including presenting meritless defenses at the summary judgment stage, filing an unsupported laches defense, meritless counterclaim, and a meritless motion to dismiss, and behaving unreasonably during discovery by insisting on proceeding with depositions even after the district court granted summary judgment on Alliance's federal trademark infringement claim and Alliance dismissed its other claims.[22] While Jacobs argues she was not responsible for this conduct, she is a principal of Coalition and personally signed the motion for summary judgment, the counterclaim, the motion to dismiss, and Coalition's memorandum insisting on proceeding with depositions after the district court's summary judgment ruling.[23] We find no abuse of discretion in the district court's decision to join Jacobs and hold her directly liable for the fee award.[24]

---

[21] *See Baker*, 821 F.3d at 623 n. 1 (explaining that the legislative history indicates that the purpose of the fee-shifting provision in the Lanham Act is similar to the purpose underlying the fee-shifting provision in the Patent Act).

[22] *Alliance II*, 919 F.3d at 296.

[23] *See, e.g.*, *Nelson*, 529 U.S. at 472 (stating that Nelson, president and sole shareholder of a party, was not insulated from liability for an attorney's fee award); *Insituform Tech.*, 385 F.3d at 1372-73 (holding main executive officer who "was directly and actively involved in all aspects of the litigation" and "individually responsible for all of the conduct that led the district court to increase damages and award attorney's fees" individually liable for Patent Act fee award).

[24] Alliance moved to strike the section of the Appellants' reply brief arguing that Jacobs was not solely responsible for Coalition's litigation conduct because that argument was waived. Since we reject Jacobs's argument, there is no need to strike it from the reply

No. 20-30233

## III.

Both Appellants argue that the fee award is unreasonable. We review the reasonableness of a fee award under the Lanham Act for abuse of discretion.[25]

The Appellants raise three challenges to the fee award. They first argue the district court had no authority to award any fees related to the two appeals because only our Court has that authority. The Federal Circuit has interpreted the Patent Act's fee-shifting provision as allowing district courts to "award[] fees for the entire case, including any subsequent appeals" because neither the text "nor its legislative history distinguishes between awarding attorney fees in the district court and in the appellate court."[26] We again find it appropriate to extend the interpretation of the Patent Act fee-shifting provision to our interpretation of the Lanham Act and find that district courts do have the authority to award appellate fees under the Lanham Act.

The district court's decision to award fees for further litigation of the attorney's fee award did not contravene the mandate rule. On remand, a lower court "must implement both the letter and spirit of [our] mandate, and may not disregard [our] explicit directives."[27] The mandate must be

---

brief. Having rejected the other portions of Alliance's motion to strike above, we deny its motion in full.

[25] *Alliance II*, 919 F.3d at 295.

[26] *Therasense, Inc. v. Becton, Dickinson and Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014) (quoting *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 692 (Fed. Cir. 1984)); *see also PPG Indus. Inc. v. Celanese Polymer Specialities Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1998) ("[T]he power to award attorney fees for appellate work is not the exclusive domain of an appellate court.").

[27] *Tollett*, 285 F.3d at 364 (emphasis omitted) (cleaned up).

"construed in the light of [our] opinion."[28] In *Alliance II*, we "remand[ed] for the district court to assess the amount of the award of fees in light of this opinion."[29] Notably, our opinion itself made two conclusions: first, we affirmed the exceptional nature of the case allowing Alliance attorney's fees, and second, we instructed the district court to adjust the award to exclude fees related to Alliance's work on the word mark claim and claims it voluntarily dismissed.[30] But we did not address whether Alliance was entitled to further attorney's fees for continued litigation of the fee award either expressly or implicitly. As such, when the district court allowed Alliance fees for continued fee-award litigation, it did not contradict either the letter or the spirit of *Alliance II*.[31]

Second, the Appellants argue Alliance failed to properly document its fees because its time sheets do not differentiate between work done on the composite mark claim as opposed to other claims. This argument ignores the efforts of the district court to adjust the fee award for claims on which

---

[28] *Id.* (emphasis omitted) (cleaned up).

[29] *Alliance II*, 919 F.3d at 298.

[30] *Id.*

[31] The Appellants argue that the district court is an improper forum for considering appellate fees. They do not argue, and so we do not address here, whether appellate fees may be recovered under the Lanham Act only when an appeal itself is exceptional as several other circuits have held. *See, e.g.*, *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 230 (1st Cir. 2002) (applying a three-factor analysis to determine whether an appeal is exceptional); *Urban Outfitters, Inc. v. BCBG Max Azria Grp., Inc.*, 430 F. App'x 131, 134 (3d Cir. 2011) (unpublished) (applying the First Circuit's three-factor analysis); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1044 (9th Cir. 1986) (declining to award appellate fees because the appeal was not exceptional); *see also Therasense*, 745 F.3d at 518 (declining to award appellate fees under the Patent Act because appeal was not exceptional); *Rohm & Haas*, 736 F.2d at 692 (allowing award of appellate fees under the Patent Act where "the appeal itself is exceptional"). We leave this question open for another day.

Alliance did not prevail. The court found that the word and composite mark claims were "intertwined" and difficult to separate because the parties had not distinguished between the word and composite mark claims prior to the first appeal. It applied a 10% across-the-board reduction to estimate for work related to the word mark claim and further reduced the award by $1,500 for the claims voluntarily dismissed.[32] The Appellants make no argument for why these reductions are an abuse of discretion. Even if they are correct that Alliance's billing entries are flawed, the proper remedy is "a reduction of the award by a percentage intended to substitute for the exercise of billing judgment," which the district court did.[33]

Finally, the Appellants argue the district court did not consider their objections to Alliance's fees motion. We disagree. The district court considered each of these objections and provided reasons for rejecting them. The Appellants make no argument that the district court's rulings on any of these objections were improper, and we find no abuse of discretion.

## IV.

The Appellants append a First Amendment argument similar to one raised in the prior two appeals, arguing that the imposition of an attorney fee award would violate their free speech. This argument rests on the premise that trademark restrictions should not apply to Coalition because it is engaged in political speech, a challenge to the injunction itself. Coalition first

---

[32] Indeed we acknowledged in our previous opinion the possibility that Alliance's work on the composite mark claim may be intertwined with its other claims, noting that the district court had a "duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment" even if it was not possible to make an exact apportionment. *Alliance II*, 919 F.3d at 298 (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000)).

[33] *Saizan v. Delta Concrete Prods. Co, Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (citation omitted).

raised this argument during its original appeal of the district court's grant of summary judgment. The *Alliance I* panel declined to examine the First Amendment issue then because it had not been preserved or ruled on below, relying on the doctrine that "an appellate court, in reviewing a summary judgment order, can only consider those matters presented to the district court."[34]

The dissent argues that this decision was clearly erroneous and so our panel is not bound by law of the case. We disagree. The clearly-erroneous exception for law-of-the-case doctrine applies only in "extraordinary circumstances."[35] "Mere doubts or disagreement about the wisdom of a prior decision of this or a lower court will not suffice for this exception. To be 'clearly erroneous,' a decision must strike us as more than just maybe or probably wrong; it must be dead wrong."[36] While the *Alliance I* panel had the discretion to address a waived argument,[37] its decision not to do so was not "dead wrong." Moreover, even if Coalition's speech is rightly considered noncommercial speech, this Court has not previously held that § 32(1) of the Lanham Act, the section at issue here, applies only to commercial speech.[38]

---

[34] *Alliance I*, 901 F.3d at 506 (citing *Frank C. Bailey Enters., Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978)).

[35] *City of Pub. Serv. Bd. v. Gen. Elec. Co.*, 935 F.2d 78, 82 (5th Cir. 1991).

[36] *Id.* (cleaned up).

[37] *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001).

[38] This Court has held that § 43(a) contains a commercial-use requirement, *see Seven-Up v. Coca-Cola Co.*, 86 F.3d 1379, 1383 & n.6 (5th Cir. 1996), but it has not extended that requirement to § 32(1). Additionally, under similar circumstances, the Second Circuit has held that § 32(1) applies to "[a] political organization that adopts a platform and endorses candidates under a trade name." *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 90 (2d Cir. 1997). Thus, this is not a case where our sister circuits have made uniform holdings that Coalition's speech falls outside the reach of

No. 20-30233

Because *Alliance I* was not "dead wrong" to decline to address Coalition's First Amendment argument, we are bound by law of the case. The argument is therefore not properly before us, and we do not address it.

## V.

We affirm.

---

§ 32(1). *See United States v. Garza*, 706 F.3d 655, 662-63 (5th Cir. 2013) (finding "clear or obvious" error where case law from sister circuits was "uniform[]").

No. 20-30233

James L. Dennis, *Circuit Judge*, dissenting:

The majority strains at gnats but swallows a camel.

This is the third appeal in this case. I regret that I was not assigned to participate in the first appeal. *See All. for Good Gov't v. Coal. for Better Gov't* (*Alliance I*), 901 F.3d 498, 506 (5th Cir. 2018). If I had taken part, I would have worked to persuade the court that applying the Lanham Act to the noncommercial political speech of Coalition for Better Government is contrary to the Act and violates the First Amendment. And had the *Alliance I* panel correctly held that Coalition's pure political speech cannot be enjoined under the Lanham Act, this litigation would have terminated, averting two additional and flawed decisions that followed *Alliance I*. *See All. for Good Gov't v. Coal. for Better Gov't* (*Alliance II*), 919 F.3d 291 (5th Cir. 2019); *All. for Good Gov't v. Coal. for Better Gov't*, No. CV 17-3679, 2020 WL 1503533, at *1 (E.D. La. Mar. 30, 2020).

It is not too late to correct *Alliance I*'s serious statutory and constitutional error, however; under our precedents "the law of the case" is not an inexorable command. We need not adhere to a former decision if it was clearly erroneous and doing so would work a manifest injustice. *E.g., Schwartz v. NMS Indus., Inc.*, 575 F.2d 553, 554-55 (5th Cir. 1978); *United States v. Vahlco Corp.*, 895 F.2d 1070, 1072-73 (5th Cir. 1990). In my view, that exception to the rule applies here. *Alliance I* and *Alliance II* were predicated on a patent error, *i.e.*, that the Lanham Act can be constitutionally applied to the noncommercial political speech of a political organization, such as the political endorsements made by Coalition in this case.[1] And

---

[1] *See Seven-Up v. Coca-Cola Co.*, 86 F.3d 1379, 1383 & n.6 (5th Cir. 1996) (holding that § 43(a) of the Lanham Act applies only to activities that are "'commercial' in nature"); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 547 & n.13 (5th Cir. 2001) (same), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) (holding

No. 20-30233

misapplying the Lanham Act to noncommercial political speech creates an anomalous precedent that will beget grave injustice—the imposition of liability for, and consequent chilling of, the exercise of constitutionally-protected free speech. What is more, the previous decisions in *Alliance I & II* set dangerous precedents inviting federal courts to improperly involve themselves in state and local political disputes.

Alliance for Good Government (Alliance) and Coalition for Better Government (Coalition) are New Orleans-based nonprofit corporations whose principal activity is the vetting and endorsement of political candidates vying for local and state offices. Their missions and work can only be described as political. Neither organization offers or advertises commercial goods or services. And the speech in which they engage—purely political speech—is at the core of the First Amendment's protections. *See Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) ("[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." (internal quotation marks omitted)).

---

that the Lanham Act applies only to commercial speech); *Utah Lighthouse Ministry,* 527 F.3d 1045, 1052–54 (10th Cir. 2008) (same); *Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 676–77 (9th Cir. 2005) (same); *Taubman Co. v. Webfeats,* 319 F.3d 770, 774 (6th Cir. 2003) (same); *Porous Media Corp. v. Pall Corp.,* 173 F.3d 1109, 1120 (8th Cir. 1999) (same); *cf. S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 552, 566 (1987) (Brennan, J., dissenting) (explaining that a "key" requirement of the Lanham Act is the rule that a trademark violation occurs only when an offending trademark is applied to *commercial* goods and services"); *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 322 (4th Cir. 2015) ("Although this case does not require us to hold that the [First Amendment's] commercial speech doctrine is in all respects synonymous with the" Lanham Act's requirement that an infringer's use of a mark be "'in connection with'" goods or services, "we think that doctrine provides much the best guidance in applying the Act. The 'in connection with' element [in § 32(1) of the Act] reads very much like a description of different types of commercial actions: 'in connection with the *sale, offering for sale, distribution,* or *advertising* of any goods or services." (quoting 15 U.S.C. § 1114(1)(a)).

No. 20-30233

Conversely, the Lanham Act, 15 U.S.C. § 1051, *et seq.* ("the Act")—the statute that Alliance alleges Coalition violated—exclusively regulates commercial activity and commercial speech.[2] Because Coalition does not engage in commercial activity or commercial speech, its conduct is beyond the reach of the Lanham Act, and holding it liable under the statute for its political speech violates the First Amendment's protections for free speech. *See Seven-Up v. Coca-Cola Co.*, 86 F.3d 1379, 1383 n.6 (5th Cir. 1996); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 547 & n.13 (5th Cir. 2001) (same), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013); *Utah Lighthouse Ministry,* 527 F.3d 1045, 1052–54 (10th Cir. 2008); *Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 676–77 (9th Cir. 2005); *Taubman Co. v. Webfeats,* 319 F.3d 770, 774 (6th Cir. 2003); *Porous Media Corp. v. Pall Corp.,*173 F.3d 1109, 1120 (8th Cir. 1999); *see also Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 321 (4th Cir. 2015) (observing that Congress "did not intend for trademark laws to impinge the First Amendment rights of critics and commentators").

Nevertheless, in the first appeal in this case, *see Alliance I*, 901 F.3d at 506, this court committed serious error by holding Coalition's speech subject

---

[2] In addition to bringing a Lanham Act claim, Alliance's complaint alleged a claim under the Louisiana Unfair Trade Practices Act, La. Rev. Stat.§ 51:1401 *et seq.* However, Alliance voluntarily dismissed that state-law cause of action in its motion for summary judgment, leaving only its claim under the Lanham Act. *See All. for Good Gov't v. Coal. for Better Gov't*, No. 17-3679, 2017 WL 6442156, at *1 (Oct. 23, 2017 E.D. La.). Thus, although there is a body of common law extending trademark protection to various entities, including nonprofits, *see* 6 Fletcher Cyclopedia of the Law of Corporations § 2436 (Sept. 2020), the only cause of action at issue here is a claim under the Lanham Act, a federal statute, which, as discussed below, carries a specific requirement that the alleged infringer use the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or service," *i.e.*, that the mark be used in commerce. 15 U.S.C. § 1114(a).

to injunction under the Lanham Act, and thus infringing on Coalition's First Amendment freedom of political expression.

Although a prior panel's rulings in a case typically bind a subsequent panel under the law-of-the-case doctrine, our decision in *Alliance I*, as noted above, was manifestly erroneous, and adhering to it now works a clear injustice. Thus, this panel's hands are not tied by that decision. *See Vahlco Corp.*, 895 F.2d at 1072-73 (applying this exception to the law-of-the-case doctrine where (1) a ruling in a prior appeal in the same litigation was "clearly in error," and (2) it "would be manifestly unjust" to follow that prior decision; accordingly, the previous decision "does not establish the law of the case and is not binding on the Court in the present appeal"). This panel should thus correct this court's error in *Alliance I* by vacating each judgment based on that error and remanding for a judgment of dismissal with prejudice with respect to Alliance's Lanham Act claim against Coalition.[3]

Remedying the foundational flaw in *Alliance I* would of course obviate the need to reach the subsequent mistakes by the district court that generated the present appeal. But because the majority chooses not to correct the foundational error of *Alliance I*, I must also address the errors committed by the district court in its decision following the remand of the case to it after *Alliance II*. In *Alliance II*, a panel affirmed in part the district court's award of

---

[3] Under this court's Rules, we are empowered to recall our mandates in *Alliance I* and *Alliance II* and reform them to direct vacatur of the judgments appealed from in order "to prevent injustice." 5TH CIR. R. 41.2; *see also Nat'l Sur. Corp. v. Charles Carter & Co.*, 621 F.2d 739, 741 (5th Cir. 1980) (explaining that this court is empowered to "recall" or "reform" a previous mandate "to prevent injustice"). Because abiding by those prior decisions would, as discussed, work a manifest injustice, *a fortiori* the standard for recalling and reforming our mandates in *Alliance I* and *II* is satisfied and, indeed, these measures are necessary to avoid the highly unjust results of those rulings. *See In re Incident Aboard the D.B. Ocean King on Aug. 30, 1980,* 877 F.2d 322, 323 (5th Cir. 1989) (holding that "the equities of this case dictate the exercise of our power under Rule 41.2 to recall and reform the mandate," when "not once, but twice this Court has itself brought about" a "potential injustice" that could only be averted by recalling the court's mandate).

attorneys' fees to Alliance. Our mandate in *Alliance II* instructed the district court only to adjust downward its $68,237.25 award of attorneys' fee to Alliance on remand. Instead, the district court awarded additional fees for time Alliance spent litigating the two appeals and its motion for attorneys' fees, resulting in a total award to Alliance of $148,006.15. The court then *sua sponte* joined Coalition's attorney, Darleen Jacobs, as a party to the case and, purporting to act pursuant to the Lanham Act's fee-shifting provision, 15 U.S.C. § 1117(a), held her personally liable for the full $148,006.15 fee award. In so doing, the district court plainly violated the mandate rule, the fundamental requirement that on remand a district court can do one thing and one thing only—scrupulously implement this court's mandate. *See, e.g., United States v. Matthews,* 312 F.3d 652, 657 (5th Cir. 2002); *Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002).

What is more, § 1117(a) of the Act nowhere states or implies that a litigant's counsel can be held liable for an award of attorneys' fees, and it thus does not authorize the district court's imposition of personal liability on Coalition's counsel. *See Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991) ("When a fee-shifting statute that authorizes the courts to award attorneys' fees to prevailing parties does not mention an award against the losing party's attorney, the appropriate inference is that an award against attorneys is not authorized."); *see also Baker v. DeShong*, 821 F.3d 620, 623-24 (5th Cir. 2016) (characterizing the fee-shifting provisions in the Lanham Act and Patent Act as "statutory equivalents" and determining that "Congress intended" the provisions "to have the same meaning" given their "parallel purpose, structure, and language"); *cf. Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 F. App'x 219, 222 (Fed. Cir. 2003) (vacating imposition of liability for attorneys' fees on losing party's counsel under the Patent Act's identically-worded fee-shifting provision because counsel cannot be "liable for fees awarded under § 285 [of the Act]; it can only be liable for excess fees awarded

under [28 U.S.C.] § 1927"); *cf. also Tech. Props. Ltd. LLC v. Canon Inc.*, No. C 14-3640 CW, 2017 WL 2537286, at *5 (N.D. Cal. Jan. 26, 2017) (holding that a litigant's counsel could not be held liable for an attorneys' fees award under § 285 of the Patent Act based on the "the text of the statute"), *aff'd*, 718 F. App'x 987 (Fed. Cir. 2018) (mem.).

In sum, this court's decision in *Alliance I* to hold Coalition liable under the Lanham Act for noncommercial political speech was clearly erroneous and following it now will result in manifest injustice. Thus, this panel is not bound by that errant determination and should correct it by vacating judgments based thereon and directing the district court to dismiss Alliance's Lanham Act claim with prejudice. *See Schwartz*, 575 F.2d at 554-55 (explaining "that 'the law case doctrine' is not an inexorable command" and need not be adhered to when a prior "decision was clearly erroneous and would work a manifest injustice"). Moreover, even if this court continues to mistakenly adhere to *Alliance I*, the district court committed multiple errors on remand from *Alliance II* that would necessitate reversal. Because the majority fails to rectify this court's error in *Alliance I* and because it ratifies the district court's errors on remand, I respectfully dissent.

## I.

The overriding problem in this case is that the Lanham Act plainly does not reach the noncommercial political speech in which Coalition engages and holding otherwise curtails important First Amendment free speech guarantees.[4] Enacted in 1946, the Lanham Act "was designed to protect both

---

[4] In *Alliance I*, the panel determined that Coalition did not preserve below its arguments (1) that the Lanham Act does not apply to noncommercial or political speech and (2) that its political speech was protected by the First Amendment, and held these issues were therefore "waived," refusing to consider Coalition's contentions. 901 F.3d at 506. This was error for at least three reasons. First, it is axiomatic that a party can only be liable for violating a statute if the statute actually applies to the party and its acts (or omissions). And determining whether a particular statute applies to a particular party necessarily requires courts to interpret that statute. *See, e.g.*, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178

No. 20-30233

(1803) ("Those who apply the rule to particular cases, must of necessity expound and interpret that rule."). Indeed, it is the very task of courts "to construe what Congress has enacted." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 56 (2006) (quoting *Duncan v. Walker,* 533 U.S. 167, 172 (2001)). Logically, then, for the *Alliance I* panel to have concluded that it could hold Coalition liable under the Lanham Act, the panel necessarily must have determined that the statute's scope covers Coalition's conduct; implicit in that determination is *Alliance I*'s (demonstrably wrong) conclusion that the Act extends to noncommercial political speech. Thus, regardless of the *Alliance I* panel's claim that Coalition waived its defense as to the interpretation of the Lanham Act, there was simply no way for the panel to hold Coalition liable without it concluding that the Lanham Act may, in its view, validly constrain noncommercial political speech. But as discussed below, the Act's history, text, and the plethora of cases interpreting the Act make clear that it does not apply to noncommercial or political speech.

Second, and as explained in more detail *infra*, *Alliance I*'s application of the Lanham Act to Coalition's noncommercial political speech infringes on First Amendment free speech rights. Again, the *Alliance I* panel necessarily had to interpret the Lanham Act in order to impose liability under it on Coalition. But applying the Lanham Act in this way directly conflicts with this court's "obligat[ion] to construe the statute to avoid constitutional problems if it is fairly possible to do so." *Boumediene v. Bush*, 553 U.S. 723, 787 (2008) (cleaned up). A reading of the Act that limits its reach to commercial speech and, moreover, precludes it from touching purely political speech is not only "fairly possible" but is the *only* plausible interpretation of the statute. Accordingly, the *Alliance I* panel failed to uphold its duty to read the Act in a manner that avoids raising constitutional doubts.

Third, even assuming Coalition did not preserve in the district court its defenses to an injunction under the Lanham Act, it nevertheless pressed those arguments on appeal in *Alliance I*, and the *Alliance I* panel therefore erred in failing to apply the plain-error standard of review to Alliance's unpreserved arguments. Decades ago, "our Court . . . adopted the practice of reviewing unpreserved error in a civil case using the plain-error standard of review." *Crawford v. Falcon Drilling Co., Inc.*, 131 F.3d 1120, 1123 (5th Cir. 1997); *see also Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 783 (5th Cir. 2017) ("We review unpreserved challenges in civil cases for plain error."); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc) (plain error applies to a party's failure to timely file written objections to a magistrate judge's report and recommendation), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Under this standard, which is identical to plain-error review in the criminal context, the court "must determine (1) if there was error, (2) if that error was plain, (3) if the error affects substantial rights, and (4) whether allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Crawford*, 141 F.3d at 1123-24 (adopting the four-prong plain-error test as articulated in *United States v. Olano,* 507 U.S. 725, 732, (1993)).

No. 20-30233

consumers' confidence in the quality and source of goods and services and protect businesses' goodwill in their products by creating a federal right of action for trademark infringement." *Peaches Ent. Corp. v. Ent. Repertoire Assocs., Inc.*, 62 F.3d 690, 692 (5th Cir. 1995) (citing S. REP. NO. 1333, 79th Cong., 2d Sess. at 1). The Act's text, its legislative history, and the

---

Considering the first prong of the test, it was error to extend the Lanham Act to noncommercial political speech because doing so, as detailed *infra*, violates the statute, which applies only to commercial speech, and tramples on free speech rights. Second, this legal error was plain. We have previously held that several of the statute's provisions—including a provision pertaining to unregistered trademarks that is analogous to the provision protecting registered trademarks at issue here—apply only to commercial speech. *See Seven-Up v. Coca-Cola Co.*, 86 F.3d at 1383 & n.6; *Procter & Gamble Co.*, 242 F.3d at 547 & n.13. And even if no Fifth Circuit decision squarely holds that the particular provision of the Lanham Act invoked here is limited to commercial speech, the "absence of circuit precedent does not prevent the clearly erroneous application of statutory law from being plain error." *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (cleaned up) (quoting *United States v. Evans,* 155 F.3d 245, 252 (3d Cir. 1998)). The obviousness of the error in the district court's interpretation of the Lanham Act is evident from the Act's text, its legislative history, and the need to give the Act a construction that does not conflict with the First Amendment. It is also underscored by the near uniform holdings of our sister circuits that the Act does not reach noncommercial speech. *Cf. United States v. Garza*, 706 F.3d 655, 662-63 (5th Cir. 2013) (error was clear or obvious because, although "this court had not [yet] definitively answered" the question presented, the caselaw on the issue among all five of our sister circuits was "uniform[]"). Third, the error affected Coalition's substantial rights. To affect substantial rights, the error generally must be "prejudicial; it must affect the outcome of the proceedings." *Crawford*, 131 F.3d at 1125 (quoting *United States v. Calverly*, 37 F.3d 160, 164 (5th Cir. 1994) (en banc), *abrogated in part on other grounds by Johnson v. United States,* 520 U.S. 461 (1997)). Obviously, the mistake in applying the Lanham Act to Coalition's noncommercial political endorsements affected the outcome of the case—indeed, was dispositive of the case—because Coalition would not have been liable for violating the Act had the statute been construed properly. Thus, the error that confronted the *Alliance I* panel was plain and affected Coalition's substantial rights. The *Alliance I* panel therefore had the discretion to notice and correct the error, and it should have done so because holding Coalition liable for violating the Lanham Act by its political speech muzzles the political organization's free speech rights, chills the speech of other political entities, and inappropriately calls upon federal courts to referee state and local political disputes, all of which "seriously affect[] the fairness" and "public reputation of judicial proceedings." *Crawford*, 131 F.3d at 1123 (quoting *Olano*, 507 U.S. at 732).

imperative to give the statute a constitutionally permissible construction all lead to the inescapable conclusion that the Act does not reach noncommercial political speech.

Start with the text. The Act defines "commerce" as "all commerce" that Congress "may lawfully regulate[]." 15 U.S.C. § 1127. Its purpose, *inter alia*, is to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Two Pesos, Inc. v. Taco Cabana Inc.*, 505 U.S. 763, 774 (1992) (internal quotation marks omitted).

Section 43(a) of the statute, which addresses false and misleading descriptions of unregistered marks, states in part that:

> Any person who, on or in connection with any good or services, . . . uses in commerce any word, term, name, symbol, or false designation of origin, . . . which . . . is likely to cause confusion . . . as to the origin . . . of [another person's] goods, services, or commercial activities, . . . shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a). The provision is meant to protect "against a myriad of deceptive *commercial* practices." *Seven-Up Co.*, 86 F.3d at 1383 (emphasis added) (quoting *Res. Dev. v. Statue of Liberty-Ellis Island Found.*, 926 F.2d 134, 139 (2d Cir. 1991)). Unsurprisingly, we have "previously determined that § 43(a) . . . only applies to commercial speech." *TMI, Inc. v. Maxwell*, 368 F.3d 433, 436 n.2 (5th Cir. 2004) (citing *Procter & Gamble Co.*, 242 F.3d at 547). The provision's legislative history supported our conclusion. *See Seven-Up Co.*, 86 F.3d at 1383 n.6. (citing 134 Cong. Rec 31,851 (Oct. 19, 1988) (statement of Rep. Kastenmeier) (commenting that the reach of Section 43(a) "specifically extends only to false and misleading speech that is encompassed within the 'commercial speech' doctrine developed by the

United States Supreme Court")); *see also Procter & Gamble Co.*, 242 F.3d at 547 n.13 (same).

At issue in this case is § 32(1) of the Act, which covers infringement of registered marks. 15 U.S.C. § 1114(1). Section 32(1) creates a cause of action when trademark infringement occurs "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" and is "likely to cause confusion, or to cause mistake, or to deceive." *Id.*

Based on the similar language between §§ 43(a) and 32(1), courts have concluded that claims under the two provisions have the same elements, with the exception that § 32(1) applies solely to registered marks. *See Lamparello v. Falwell*, 420 F.3d 309, 312-13 (4th Cir. 2005); *cf.* Margreth Barrett, *Finding Trademark Use: The Historical Foundation for Limiting Infringement Liability to Uses "In the Manner of A Mark"*, 43 WAKE FOREST L. REV. 893, 942–43 (2008) ("While the statutory language of sections 32(1)(a) and 43(a) differs, the provisions are generally understood to impose the same standard for infringement."). "To prevail under either cause of action, the trademark holder must prove:

> (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred 'in commerce'; (4) that the [opposing party] used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers."

*Lamparello*, 420 F.3d at 313 (alterations in original). Significantly, both provisions require that actionable infringement be "in connection with" goods or services in a manner likely to cause confusion to consumers. *Compare* 15 U.S.C. § 1125(a) (use of mark "in connection with any goods or services"), *with id.* § 1114(1) (use of mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services"). "This is commonly

described as the commercial use requirement." *Utah Lighthouse Ministry*, 527 F.3d at 1052.

In light of this requirement, the clear majority of circuits to have considered whether the Act applies to *any* noncommercial speech have determined that it does not. *See Bosley Med. Inst., Inc.,* 403 F.3d at 676–77 (construing § 32(1)); *Taubman Co.,* 319 F.3d at 774 (same); *Farah*, 736 F.3d at 541; *Utah Lighthouse Ministry,* 527 F.3d at 1052–54; *Porous Media Corp..,*173 F.3d at 1120; *cf. S.F. Arts & Athletics, Inc.*, 483 U.S. at 566 (Brennan, J., dissenting); *Radiance Found., Inc.*, 786 F.3d at 322.[5]

In the instant case, Coalition's use of its emblem certainly was not "in connection" with commercial activity. Coalition exists solely to engage in the endorsement of candidates for public office. As the district court recognized, "[p]eople are not buying products here." Because these entities' activities are not commercial in nature, the Lanham Act simply does not apply to this case.

Applying the Lanham Act in the manner the *Alliance I* panel did was also clearly inconsistent with Congress's intent in enacting the statute. Congress specifically recognized the constitutional problems of creating liability for free speech and sought to avoid doing so. *See Radiance Found., Inc.*, 786 F.3d at 321; *see also MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, No. 00 CIV. 6068, 2004 WL 434404, at *7–8 (S.D.N.Y. Mar. 8, 2004) ("The

---

[5] In *United We Stand, Inc. v. United We Stand, America New York, Inc.*, the Second Circuit held that that noncommercial political activities may be "services" within the meaning of the Lanham Act but also stated that a "crucial" factor in permitting such a conclusion is that the infringer "us[e] the Mark not as a commentary on its owner, but instead as a source identifier." 128 F.3d 86, 89-92 (2d Cir. 1997). Not only is the Second Circuit the sole outlier court in an otherwise uniform line of federal appellate authority holding that the Lanham Act does not apply to noncommercial speech, but the Second Circuit is also incorrect that purely political speech is a "service" under the Lanham Act. "[S]uch a service is not being rendered in commerce[;] it is being rendered as part of the political process." *Tax Cap Comm. v. Save Our Everglades, Inc.,* 933 F. Supp. 1077, 1081 (S.D. Fla. 1996).

legislative history of the Lanham Act clearly indicates that Congress did not intend for the Act to chill political speech."). Congress's concerns were well founded. As stated, the *Alliance I* panel's interpretation of the Lanham Act raises serious constitutional concerns. Coalition limits itself to endorsements of political candidates, so its use of an avian emblem similar to Alliance's occurred only in the context of engaging in political speech. Imposing liability under the Act on Coalition for its political speech, then, results in the precise problem Congress aimed to avoid: creating liability under federal trademark law for actors exercising their free speech rights.

It is well established that commercial speech—that is, speech that does "no more than propose a commercial transaction," *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)—is accorded only a "measure of First Amendment protection." Indeed, "the government may freely regulate" misleading commercial speech, the very speech that the Lanham Act was meant to target. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623-24 (1995). By contrast, free speech protections are at their zenith in the context of political speech precisely because such speech is at the heart of the values embodied in the First Amendment. *See McIntyre v. Ohio Elecs. Comm'n*, 514 U.S. 334, 346 (1995) ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people." (cleaned up)). Extending liability under the Lanham Act to noncommercial political speech risks eroding the First Amendment's safeguards for political expression.[6] Finally, under the canon

---

[6] To the extent that there may be concern over permitting a political organization to use marks that are confusingly similar to those of another political entity, Justice Brandeis's concurring opinion in *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis,

No. 20-30233

that "statutes should be interpreted to avoid constitutional doubts," *Clark v. Martinez*, 543 U.S. 371, 379 (2005), the Lanham Act ought not be construed to apply to political speech in order to avoid a construction of the Act that could conflict with the First Amendment.

Because Coalition only used its emblem in the context of political speech, the Lanham Act simply and obviously cannot be applied to its speech. Thus, the *Alliance I* panel's decision to impose on Coalition liability under the Act was clearly erroneous.[7] Moreover, adhering to that grievously wrong decision will result in a manifest injustice by stifling the political speech that is key to the functioning of our democracy. The law-of-the-case doctrine therefore does not stand as an impediment to correcting our past mistakes,

---

J., concurring), which Justice Holmes joined, suggests an answer: "If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence."

[7] For nearly sixty years, this court has repeatedly and consistently explained that the law of the case does not apply when a prior "decision is clearly erroneous and works manifest injustice." *Lincoln Nat. Life Ins. Co. v. Roosth*, 306 F.2d 110, 113, (5th Cir. 1962); *accord Lumberman's Mut. Cas. Co. v. Wright*, 322 F.2d 759 (5th Cir. 1963); *White v. Murtha*, 377 F.2d 428, 432 (5th Cir. 1967); *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978); *Goodpasture, Inc. v. M/V Pollux*, 688 F.2d 1003, 1005-06 (5th Cir. 1982). Clear error is a familiar legal standard for reviewing prior decisions that applies across various contexts. For example, appellate courts apply clear error in reviewing district court's factual findings, *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985), and in reviewing discretionary decisions by district courts, *United States v. Walker*, 772 F.2d 1172, 1176 n.9 (5th Cir. 1985). A decision is clearly erroneous when the reviewing court is left with "a definite and firm conviction" that the previous court was in error. *Id.* Under this standard, based on the foregoing analysis, it is plain that the decision in *Alliance I* was clearly erroneous. On a handful of occasions, this court has stated that for a previous decision to be "clearly erroneous" such that the exception to the law-of-the-case doctrine for clearly erroneous and manifestly unjust rulings may apply, the prior decision must have been "dead wrong." *E.g.*, *City Pub. Serv. Bd. v. Gen. Elec. Co.*, 935 F.2d 78, 82 (5th Cir. 1991). But the "dead wrong" language has been employed infrequently and inconsistently and does not alter or supplant the proper and longstanding test for assessing whether a previous ruling was clearly erroneous—that the appellate court must have a definite and firm conviction that the prior decision was wrong.

and the majority errs in failing to do so. *See Vahlco Corp.*, 895 F.2d at 1072-73.

## II.

Beyond the fundamental error in *Alliance I* that has infected the entire litigation, the district court's missteps on remand from *Alliance II* raise their own set of problems. Foremost among them, the able district court acted outside the narrow ambit of our mandate. In *Alliance II*, we directed the district court to undertake only one action on remand: reducing and reallocating its attorneys' fee award to Alliance. 919 F.3d 291. Rather than heeding our mandate, the district court (1) increased its fee award by awarding to Alliance fees incurred for time spent on the appeals in *Alliance I* & *II* and in prosecuting its motion for attorneys' fees, (2) *sua sponte* joined Jacobs as a party, and (3) held Jacobs personally liable for the total augmented award. A brief summary of this case's lengthy procedural history makes manifest the district court's error.

At the outset of the litigation, Alliance claimed that both Coalition's "word mark"—its trade name, Coalition for Better Government—and its "composite mark"—its emblem—infringed on Alliance's marks. The district court agreed, enjoining Coalition from using both its trade name and emblem. Coalition appealed, and this court concluded that only Coalition's emblem, and not its trade name, violated the Lanham Act. The *Alliance I* panel thus modified the district court's injunction to restrain only Coalition's use of the emblem. *See* 901 F.3d at 514.

During the pendency of the first appeal, the district court determined that the case was "exceptional" within the meaning of the Lanham Act's attorneys' fees provision, 15 U.S.C. § 1117(a), and thus awarded Alliance, as the prevailing party, $68,237.50 in attorneys' fees. Coalition appealed, and this court, in the second appeal in this matter, affirmed the conclusion that the case warranted an award of attorneys' fees. *Alliance II*, 919 F.3d at 297.

The *Alliance II* panel noted, however, this court's earlier determination in *Alliance I* that Alliance had prevailed only on its emblem claim. Hence, in *Alliance II*, "we remand[ed] for the district court to reassess the amount of fees" to omit work that furthered Alliance's trade-name claim from its fee calculation. *Id.* at 293. Specifically, our mandate called only for the district court "to account for billed time for claims on which Alliance did not prevail, and to adjust the fee award accordingly." *Id.* at 298. We gave no indication that the district court should take any action other than a downward adjustment of the attorneys' fees award.

In failing to hew to the constraints we imposed on remand, the district court violated the well-established mandate rule. That rule "provides that a lower court on remand must implement both the *letter and spirit* of the [appellate court's] mandate." *Tollett*, 285 F.3d at 364 (internal quotation marks omitted) (alterations in original). Notably, the mandate rule extends both to those matters "decided expressly or by necessary implication" by the appeals court. *DeJoria v. Maghreb Petroleum Expl., S.A.*, 938 F.3d 381, 394 (5th Cir. 2019). A district court is "without power to do anything which is contrary to either the letter or spirt of the mandate *construed in the light of the opinion of [the] court deciding the case*." *Id.* (alterations in original) (internal quotation marks omitted).

The Supreme Court's decision in *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 305 (1948), is instructive on how a district court can run afoul of the mandate rule. In that case, a jury returned a verdict of $42,500 in favor of the plaintiff, but the district court granted a post-verdict motion to dismiss the case for lack of jurisdiction. *Id.* The appellate court, however, reversed and directed that the district court, in accordance with the jury's verdict, enter judgment for the plaintiff. *Id.* On remand, despite the fact that the appellate court's mandate "made no provision for interest," the district court entered judgment and "added to the verdict interest from the date the [jury returned its

verdict] to the date of the judgment." *Id.* The Supreme Court determined that it was "clear that the interest was in excess of the terms of the mandate and hence was wrongly included" by the district court. *Id.* at 306. *Briggs* thus stands for the proposition that a district court violates the mandate rules where it takes actions on remand that the appeals court "made no provision for," thereby exceeding the "terms of the [appellate] mandate." *Id.*

*Tollett v. City of Kemah* presented very similar facts to the present appeal, and our decision there underscores the district court's error. 285 F.3d at 364. In *Tollett*, a district court awarded $5,000 in sanctions against the defendant city and two of its employees. The amount of the award was purportedly to compensate the plaintiff for attorneys' fees and court costs incurred in connection with the sanctioned entities' discovery abuses. On appeal, the plaintiff conceded that the quantum of the sanctions was not supported by proof of reasonable fees and costs. Thus, this court vacated the award and "remand[ed] for a redetermination and assessment of reasonable attorney's fees and costs." *Id.* at 362 (emphasis omitted).

But on remand the district court imposed sanctions and attorneys' fees against not only the city but also the city's counsel, while dropping the fees it had previously assessed against the city's employees. *Id.* at 363. The city and its attorney appealed, contending that the district court violated the mandate rule. We agreed, explaining that it was "clear from our opinion" in the first appeal "that the district court was not to redetermine . . . whether, and against whom, sanctions should be imposed. The opinion expressly directed the district court *only* to determine the *proper amount to impose as . . . sanctions*." *Id.* at 365. Accordingly, we, once again, vacated the sanctions and fee award. *Id.* at 366; *see Doe v. Chao*, 511 F.3d 461, 466-67 (4th Cir. 2007) (holding that district court violated the mandate rule when the appeals court's mandate called only for reconsideration of award of attorneys' fees for work performed during district-court proceedings but, on remand,

district court awarded fees for work performed during appellate phase of the litigation); *Wang v. Douglas Aircraft Co.*, 221 F.3d 1350, *1 (9th Cir. 2000) (unpublished) (district court violated mandate rule where mandate directed court to determine whether a foreign law firm was entitled to attorneys' fees based on the work performed by the firm but district court instead awarded fees in accordance with terms of a letter agreement between the foreign firm and a local firm that reallocated fees; appeals court's mandate "precluded any . . . inquiry" other than whether foreign firm was entitled to fees based on its legal services, not a letter agreement).

Here, too, the import of our directive to the district court on remand was "clear": it was only to reevaluate its attorneys' fee calculation in order to award Alliance fees solely for time spent on the emblem claim, thereby reducing its earlier award. The "necessary implication" of our mandate was that the district court was barred from doing anything other than reducing the fee award. *DeJoria*, 935 F.3d at 394. Venturing beyond our delimited directive, the district court *sua sponte* joined Jacobs as a party to the case; held her personally liable; and awarded additional attorneys' fees against Coalition and Jacobs for Alliance's prosecution of both appeals and its motion for attorneys' fees, causing the fee award to mushroom to over $148,000. But as in *Tollett*, our directive to the district court "was not to redetermine . . . against whom[] sanctions should be imposed," nor was it to augment the sanctions. *See id.* at 365.

Coalition is therefore correct that the district court's order was directly contrary to our mandate. The majority, however, fails to mention this argument, characterizing Jacobs and Coalition as merely contending that the district court was an "improper forum" for considering appellate attorneys' fees. *See* Maj. Op. at 10 n.54. True, Coalition made that assertion in its briefing on appeal, but it also expressly objected to the district court's award of appellate attorneys' fees on a second basis; Coalition explained that the

district court's decision is inconsistent with *Alliance II* because in that appeal we ordered the district court only to recalculate attorneys' fees to account for the claim on which Alliance prevailed, and, as Coalition states in its brief, "[n]othing in" our "opinion address[ed]" appellate attorneys' fees.

Because Coalition adequately raised the issue of the district court's compliance with the mandate rule, and because the district court did not faithfully apply our mandate in *Alliance II*, I cannot agree with the majority's endorsement of the decision to join attorney Jacobs as a party to the case or to award Alliance additional attorneys' fees for time incurred in litigating the two appeals and its fees motion.

### III.

Regrettably, in holding Jacobs personally liable for the award of attorneys' fees, this court becomes the first to my knowledge to sanction such liability against a party's counsel under the Lanham Act's fee-shifting provision, 15 U.S.C. § 1117(a). Indeed, the Federal Circuit, in construing that the Patent Act's identically-worded fee-shifting provision, has expressly held that the provision cannot be used to impose liability for attorneys' fees on a party's counsel. *Phonometrics, Inc.*, 64 F. App'x at 222 ("Section 285 is a fee shifting statute that in exceptional cases may require the losing party to reimburse the prevailing party its attorney fees. Sheraton[, the prevailing party,] has provided us with no legal basis for entering a fee award against the losing party's attorney under § 285. . . . Counsel for Phonometrics is not liable for fees awarded under § 285."); *see also Baker*, 821 F.3d at 623-24 (borrowing attorneys' fees jurisprudence under the Patent Act to interpret the fee-shifting provision in the Lanham Act).

That no court has previously permitted imposing attorneys' fees against a party's counsel under the Lanham Act and that the Federal Circuit has held that imposing such fees on an attorney is not authorized by the Patent Act is unsurprising in light of the text of the statutes' attorneys' fees

provisions, which both read: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); 35 U.S.C. § 285. Notably absent from the provisions is any explicit authorization to impose attorneys' fees against a party's counsel. "When a fee-shifting statute that authorizes the courts to award attorneys' fees to prevailing parties does not mention an award against the losing party's attorney, the appropriate inference is that an award against attorneys is not authorized." *Healey*, 947 F.2d at 624. Section 1117(a) thus "stands in contrast to other sections and [Federal] Rules [of Civil Procedure] that expressly provide for the imposition of sanctions against attorneys," *id.*, such as 28 U.S.C. § 1927, which empowers courts to order "[a]ny attorney" who "multiples the proceedings in any case unreasonably and vexatiously" to pay the costs and attorneys' fees incurred because of their conduct, and Rule 11(b), which authorizes district courts to award sanctions against "attorney[s]" for misconduct in an array of circumstances. The availability of these traditional—and effective—tools to discipline wayward behavior by counsel means that courts will not be hampered in their ability to police proceedings without applying § 1117(a) against a litigant's counsel; similarly, these well-established provisions ensure that parties can recover costs incurred as a result of opposing counsel's unprofessional conduct.

Further underscoring that Jacobs cannot be held liable for the award of attorneys' fees under § 1117(a) for her representation of Coalition is that, even in cases where courts have imposed attorneys' fees personally on individuals who were not party to the underlying litigation, they have done so not against a party's counsel; rather, attorneys' fees have been assessed against individuals who served as a company's president, owner, or sole shareholder when that individual's conduct caused the case to be "exceptional" under a proper interpretation of the Lanham or Patent Acts. *See, e.g.*, *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985) (holding that an

individual who was "not a proper party to" the claims for violation of the Patent Act "may be assessed fees under § 285 [of the Patent Act] if his conduct supports a finding that the case is exceptional" (citing *Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed. Cir. 1984)); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 852-53 (E.D. Tex. 2017) (imposing attorneys' fees against a company that filed a meritless patent-infringement suit and holding the owner of the company jointly liable for the fees where the owner was the "driving force behind th[e] litigation" and was "responsible" for making the case exceptional). Indeed, the majority states that its decision to hold Jacobs personally liable is rooted in the notion that "[a]n officer is individually liable for any tortious conduct that he committed in connection with his corporate duties." Maj. Op. at 7 (internal quotation marks omitted). But the principle of imposing liability for attorneys' fees not only on the business that is the party to the case but also on the individual who stands behind that business and directs its conduct has no application to an attorney representing her client; attorneys initiate and prosecute cases at the behest of their clients, but it is the client who ultimately must decide whether to bring a case. Thus, when the fee-shifting provision is applied to individuals who were not party to the underlying litigation, it should be reserved for those who, in their capacity as a high-level officer or owner of an organization, make a case exceptional. *See Mach. Corp. of Am.*, 774 F.2d at 475.[8]

---

[8] The majority cites Jacobs's leadership role within Coalition as a basis for holding her personally liable for the fee award. Maj. Op. at 8. But this misapprehends the basis of the district court's decision to hold Jacobs liable for the fee award; the district court expressly cited Jacobs's conduct as Coalition's *counsel*—not her position within Coalition's corporate structure—as rendering the case "exceptional" under the Lanham Act and thus justifying imposing liability for the award on her personally. Indeed, in its order holding Jacobs personally liable, the district court discussed only Jacobs's actions as an attorney for Coalition: "Jacobs is personally responsible for" filing a meritless "motion for summary judgment, . . . counterclaim, and . . . motion to dismiss because she personally signed them, thus certifying that they were not presented for any improper purpose and were not frivolous." The court further found that Jacobs's conduct rendered the case exceptional

In sum, Coalition and Jacobs may not be held liable for anything in this case because no Lanham Act claim arises from Coalition's noncommercial political speech, and, independently of that, no Lanham Act defendant's counsel may be cast for attorneys' fees under the Act's fee-shifting provision.[9] *See Healey*, 947 F.2d at 624, *cf. Phonometrics, Inc.*, 64 F. App'x at 222.

Bereft of authority under the Lanham Act to impose fees directly on Jacobs, the district court's decision resembles an attempt to pierce Coalition's corporate veil. But during the proceedings in the district court, Alliance never attempted to pierce Coalition's corporate veil; in fact, its motion

because she was "personally responsible" for abuses in discovery that necessitated issuance of a protective order to prevent a wasteful deposition; "she was the one who insisted on proceeding with the depositions even after the Court granted summary judgment and Alliance informed the Court that it would not pursue its remaining claim." Wholly absent from the court's order is any mention of actions undertaken by Jacobs in her position as an officer or principal of Coalition. The majority's citations to *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) and *Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004) are therefore inapposite; those cases concern imposition of personal liability for fees on non-lawyers who had senior roles in organizations that had already been held liable for the fees in question. It was precisely the individuals' wrongful conduct—alleged conduct, in *Nelson*—that was undertaken in their positions within their respective organizations that permitted—or would permit, in *Nelson*—holding them personally liable for the fees imposed on their organizations. Conversely, the district court sought to hold Jacobs liable based not on her role and work within Coalition but instead for her conduct as its counsel.

[9] Jacobs was joined as a party only after this court held that Coalition had waived its noncommercial speech and First Amendment defenses, and thus never had the opportunity to lodge these defenses on her own behalf in this court. Now, when she attempts to advance those arguments to protect herself from personal liability, the majority holds the law of the case precludes her doing so. Maj. Op. at 11. This is highly inequitable, particularly in light of the clear merit of her constitutional and statutory defenses, which she has never personally waived. The majority attempts to justify its decision on the grounds that the merits of the infringement claim itself are no longer at issue, and the question now is only one of the appropriate amount of attorneys' fees. Maj. Op. at 11. But the majority offers no analysis as to why Coalition's litigation choices somehow bind Jacobs personally, and, as noted *infra*, there was no finding by the district court that Jacobs controlled Coalition such that its litigation conduct could be attributed to her. The majority thus errs in stripping Jacobs of the opportunity to marshal her full array of defenses.

for attorneys' fees makes no mention of veil piercing nor asserts that Jacobs is the alter ego of Coalition. *Cf. Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 409-10 (5th Cir. 1998) (observing that, under Louisiana law, "a plaintiff seeking to pierce the corporate veil" must either demonstrate that the corporate form was used "to perpetuate fraud" or must "bear[] a heavy burden of proof in demonstrating that the corporate form has been disregarded by the shareholders to the extent that the corporation and shareholders are indistinguishable").[10]  In the absence of any argument that the district court should pierce Coalition's corporate veil, it is unsurprising that the court did not make any of the predicate findings necessary to disregard the legally distinct juridical identities of Coalition and Jacobs; there was no finding that Coalition was the alter ego of Jacobs, that Coalition disregarded corporate formalities, or that Coalition was used by Jacobs to perpetuate a fraud. *See id.* And in its briefing in this appeal, Alliance expressly disclaims that it seeks to veil pierce, contending instead that it could do so in a *separate* lawsuit. Under these circumstances, veil piercing is obviously inappropriate and cannot support the district court's decision to thrust upon Jacobs the liability for fees charged to Coalition.

Accordingly, the district court was without authority under the Lanham Act to hold Jacobs directly and personally liable for attorneys' fees, did not invoke any other source of authority to hold Jacobs liable in her capacity as an attorney, and could not and did not make the findings necessary to pierce Coalition's corporate veil.

---

[10] "Whether to apply Louisiana or federal law is not an issue.  State and federal alter ego tests are essentially the same.  Our non-diversity alter ego cases rarely state whether a state or federal standard controls, and apply state and federal cases interchangeably." *Century Hotels v. United States*, 952 F.2d 107, 110 n.4 (5th Cir. 1992).

\* \* \*

In conclusion, this court's decision in *Alliance I* does violence to the text of the Lanham Act by expanding the statute into territory it was never intended to reach—noncommercial and political speech—and, worse yet, authorizes applying the Act in a manner that invades constitutionally-protected political speech and will embroil federal courts in local political disputes. *Alliance I* and the tainted rulings it spawned must therefore be corrected to prevent Coalition from suffering an injustice in this case and, more broadly, to reform this court's Lanham Act caselaw to avert chilling the speech of other organizations and individuals that likewise engage only in political speech. Accordingly, this panel should recall the mandates in *Alliance I* and *II*, vacate all judgments imposing liability under the Lanham Act on Coalition for its political speech, and instruct the district court to dismiss Alliance's Lanham Act claim with prejudice. For these reasons and those set forth above, I respectfully dissent.