# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2022

Lyle W. Cayce
Clerk

No. 20-60098

---

Reginald Desmond Wallace,

*Petitioner—Appellant*,

*versus*

State of Mississippi; Burl Cain, Commissioner,
Mississippi Department of Corrections,

*Respondents—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:19-CV-465

---

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Rhesa Hawkins Barksdale, *Circuit Judge*:

This appeal pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2241 *et seq.*, is by a Mississippi state prisoner seeking habeas relief under 28 U.S.C. § 2254. Following a state trial court's Judgment of Conviction based on guilty pleas and a much later Order of Sentence (collectively the judgment), petitioner, under state law, could not take a direct appeal to a state court. Nor did he seek direct review by the Supreme Court of the United States. The failure to do so underlies the following compelled and complex analysis.

No. 20-60098

Because direct review by the Supreme Court was not pursued, primarily at issue is: For determining the date on which AEDPA's one-year limitations period (one-year period) to seek federal habeas relief from a state-court judgment begins running, when does the judgment resulting from a guilty-plea conviction and sentence in Mississippi, for which there is no direct appeal to a Mississippi state court, become final. Does it become final the day the judgment is filed, or 90 days later, when, pursuant to Supreme Court Rule 13(1), the time has expired for seeking direct review from the Supreme Court of the United States by filing a petition for writ of certiorari (90-day period)?

Reginald Desmond Wallace, a Mississippi inmate who pleaded guilty to felony charges, contests his 28 U.S.C. § 2254 petition's being dismissed on the basis that it was filed 61 days late, using for finality of judgment the date his Order of Sentence was filed. He contends the judgment did not become final until the 90-day period expired because Mississippi law prohibited his seeking direct state-court review of his guilty-plea convictions and sentence and, therefore, he instead could have pursued direct review by the Supreme Court of the United States (finality issue). Therefore, had the 90-day period been accorded Wallace by the district court, his petition would have been filed timely.

Although our court granted Wallace a certificate of appealability (COA) on this finality issue, Wallace did not assert in district court, or in his *pro se* motion to our court for the COA, that the judgment became final only upon the 90-day period's expiration. To the contrary, Wallace's counsel in district court conceded it did not. Accordingly, the threshold question for our considering this finality issue is whether Wallace preserved it.

Wallace also raises an alternative issue: whether our court should vacate the dismissal of his petition and remand to district court for him to

No. 20-60098

present an equitable-tolling issue with conflict-free counsel, in the light of *Christeson v. Roper*, 574 U.S. 373 (2015) (explaining, in context of AEDPA's statute of limitations, conflict of interest generally arises when counsel asserts equitable tolling should apply because of counsel's failure to meet deadline). Wallace also moved to expand his COA to cover this alternative issue, noting it was unclear whether the COA encompassed it.

For Wallace's finality issue, we hold: his judgment became final upon the 90-day period's expiration; and, therefore, his petition was filed timely. Accordingly, it is not necessary to consider Wallace's alternative equitable-tolling issue, including whether to expand the COA. VACATED and REMANDED.

I.

This appeal centers on whether Wallace's habeas petition was filed timely. Therefore, an extremely detailed chronology of his lengthy state and federal proceedings is required.

A.

Wallace and four codefendants were indicted in April 2012 in a Mississippi circuit court of armed robbery, kidnapping, and conspiracy to commit armed robbery, in violation of Mississippi Code Annotated §§ 97-1-1, 97-3-53, 97-3-79. Wallace retained counsel (state counsel). (As provided in his later state-court post-conviction proceeding, he allegedly insisted to state counsel that: he did not plan the crime; and he learned of the plan once the robbery had begun.)

On 12 September 2012, Wallace filed a motion to suppress a handgun that was seized during a search of his home. Asserting that "the State intend[ed] to convince the jury that this handgun was the one used in the" three charged offenses, he challenged law enforcement's assertion that the

No. 20-60098

handgun had been in plain view. Wallace contended in his later state-court post-conviction proceeding that the trial court declined to consider the motion unless he proceeded to trial.

In any event, Wallace on 24 September 2012 filed a petition to plead guilty to the three charged offenses. The court accepted his pleas that same day, and filed a Judgment of Conviction, in which sentencing was set for 5 November 2012.

Sentencing, however, was reset numerous times. During the sentencing phase, Wallace retained new counsel. Pursuant to an Order of Sentence filed on 6 June 2013, he was sentenced to, *inter alia*, concurrent terms of: 30 years' imprisonment for the armed robbery and kidnapping offenses; and five years' for the conspiracy offense.

Critical to this appeal, Mississippi law proscribed Wallace's filing a direct appeal because he pleaded guilty and was sentenced. MISS. CODE ANN. § 99-35-101 ("Any person convicted of an offense in a circuit court may appeal to the [Mississippi] Supreme Court. However, where the defendant enters a plea of guilty and is sentenced, then no appeal from the circuit court to the Supreme Court shall be allowed".). Wallace did not seek a writ of certiorari from the Supreme Court of the United States (Court).

Ten months after being sentenced, Wallace on 10 April 2014 filed in circuit court a *pro se* motion for state post-conviction relief, contending, *inter alia*: his guilty plea was involuntary; and he received ineffective assistance from state counsel. (The motion was docketed on 14 April, but because Mississippi's prisoner-mailbox rule applied, it was effectively filed on 10 April.)

In response, the State on 3 July 2014 presented, *inter alia*, an affidavit by Wallace's state counsel, providing Wallace had: rejected an offer to plead guilty to the lesser charge of "simple robbery" (robbery plea-offer); and lied

to state counsel about his involvement in the armed robbery. (The Mississippi Court of Appeals later explained: "In Mississippi, there is no offense titled 'simple' robbery". *Wallace v. State*, 264 So. 3d 1, 3 n.1 (Miss. Ct. App. 2018) (en banc). Accordingly, that court "expressed [its] understanding to be that the characterization in [Wallace's state-counsel's] affidavit refers to robbery . . . ". *Id.*)

By a letter to the circuit court filed 21 July 2014, Wallace stated he first learned of the robbery plea-offer in state-counsel's affidavit. Wallace's motion was dismissed on 6 August 2014 without a hearing.

He appealed through new counsel (who also later represented him in district court). The Mississippi Court of Appeals, *inter alia*: ruled there was no merit in Wallace's claims presented in his *pro se* motion for post-conviction relief; but, reversed and remanded for an evidentiary hearing on whether state counsel provided ineffective assistance by failing to inform Wallace of the robbery plea-offer, as claimed in his letter to the circuit court. *Wallace v. State*, 184 So. 3d 993, 1001–03 (Miss. Ct. App. 2016).

On remand, the circuit court on 3 October 2016 conducted a hearing, including admission of evidence, and subsequently denied post-conviction relief. Wallace appealed, and the Mississippi Court of Appeals affirmed on 24 July 2018. *Wallace*, 264 So. 3d at 2.

The Mississippi Supreme Court on 14 February 2019 denied Wallace's request for certiorari. *Wallace v. State*, 263 So. 3d 664 (Miss. 2019). The mandate issued on 7 March 2019. In short, Wallace's state post-conviction proceedings took 1,792 days, approximately five years.

### B.

On 3 July 2019, four months after the state mandate issued, Wallace, through counsel who had represented him on appeal from the dismissal of his

motion for state post-conviction relief (hereinafter district-court counsel), filed for 28 U.S.C. § 2254 relief, contending the Mississippi Court of Appeals' affirming the denial of his ineffective-assistance-of-counsel claim—that *state counsel* failed to communicate to Wallace an offer to plead guilty—was not supported by the facts presented at the circuit court hearing.

The State moved to dismiss the petition as untimely under AEDPA. As discussed *infra*, AEDPA imposes the above-referenced one-year period to file a § 2254 petition for habeas relief from a state-court judgment. The one-year period begins running from the latest of, *inter alia*, the state-court judgment of conviction's "bec[oming] final by the conclusion of direct review *or the expiration of the time for seeking such review*". 28 U.S.C. § 2244(d)(1)(A) (emphasis added). (As explained *infra*, the expiration of time for seeking direct review includes the above-referenced 90-day period.) And, the one-year period is tolled "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending". 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 331 (2007).

Without expressly claiming, as it does now, that Wallace was not entitled to the 90-day period before his judgment became final, the State maintained the judgment became final on 6 June 2013 (when Order of Sentence filed). The State accounted for the 1,792 days of statutory tolling under AEDPA's tolling provision, between 10 April 2014 (the effective filing date of Wallace's *pro se* motion for state post-conviction relief under Mississippi's prisoner-mailbox rule) and 7 March 2019 (when the Mississippi Court of Appeals' mandate issued). *See* 28 U.S.C. § 2244(d)(2). The State, therefore, maintained that Wallace's petition: had to have been filed by 3 May 2019 to have been timely; but instead was filed on 3 July, 61 days later.

No. 20-60098

In response, Wallace agreed his petition was untimely. Of importance to this appeal, district-court counsel stated in Wallace's response:  although she informed Wallace's mother that Wallace was allowed one year and 90 days (district-court counsel presumably referenced the 90-day period, although she cited no authority regarding it) to file a habeas petition, district-court counsel missed the filing deadline because she "rel[ied] on past experience and did not realize that the ninety days allowed for United States Supreme Court review applied only to cases on direct appeal and not to cases like Wallace's that were on post-conviction". District-court counsel requested the court to apply equitable tolling because Wallace should not be penalized for district-court counsel's negligence.

The magistrate judge's (MJ) report and recommendation (R & R) stated:  Wallace's judgment became final on 6 June 2013 (when Order of Sentence filed) because Mississippi law prohibits a direct appeal from a guilty plea and sentence; applied statutory tolling from 10 April 2014 (the date Wallace signed his *pro se* motion for post-conviction relief) until 7 March 2019 (the date the mandate issued); and, taking statutory tolling into account, Wallace's petition had to have been filed by 3 May 2019 to be timely, but was instead filed 426 non-tolled days after his judgment became final. Accordingly, the MJ recommended that Wallace's petition be dismissed with prejudice.

Notably, and presumably in reference to the 90-day period, the MJ stated:  "[Wallace's district-court] counsel argues that she was not aware the 90 days allowed for United States Supreme Court review applied only to cases on direct appeal and not to cases on post-conviction review".  In any event, the R & R does not discuss why Wallace's judgment became final before the expiration of the 90-day period, including why he was not entitled to that 90-day period.

No. 20-60098

The MJ also recommended that Wallace's requested equitable tolling not be granted. This was based on recommending that Wallace's district-court counsel's negligence did not rise to the level required for such relief.

Wallace did not object to the R & R on the basis that the 90-day period applied, resulting in the petition's being filed timely. Instead, Wallace objected only to not being accorded equitable tolling. In doing so, district-court counsel raised a similar, but different, issue in favor of applying such tolling: "Wallace should not be penalized because of his [district-court] counsel's failure to realize that the [90] days for seeking certiorari review with the United States Supreme Court appl[i]es only on direct appeal and not to a petitioner who had pleaded guilty and, therefore [under Mississippi law], has no direct appeal".

The district court in its order: stated it had reviewed Wallace's equitable-tolling objection, but did not state it had reviewed the record; adopted the R & R; like the R & R, did not discuss why Wallace's judgment became final before the expiration of the 90-day period; and dismissed the action with prejudice, without addressing the merits of Wallace's claims. In the order, it also denied *sua sponte* a COA without identifying the underlying issues, stating: "While petitioner has demonstrated that 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right,' he has not shown that 'jurists of reason would find it debatable whether [this] court was correct in its procedural ruling'" (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For the referenced "procedural ruling", there was again no discussion about whether it included Wallace's not being entitled to the 90-day period.

Appealing to our court, Wallace filed a *pro se* motion for a COA on two issues. He first raised whether the district court erred in dismissing his habeas petition as time barred, noting district-court counsel: "failed to file a

No. 20-60098

timely habeas corpus application or brief in support which resulted in dismissal for procedural bar"; delayed in filing because of "a financial situation where [counsel] was not being paid as fast as was planned"; and "actively mislead [him] by lies or deception" that the petition would be filed timely. (As stated *supra*, district-court counsel did not file Wallace's petition until four months after the state mandate issued.) Attached as an exhibit to his motion was an email to his mother *from district-court counsel*, in which she changed her explanation for why Wallace's petition was filed late: "[Wallace]'s case was dismissed because I missed the deadline – *there was no extra 90 days for persons who pleaded guilty*. I had never filed a habeas [petition] from a guilty plea before and did not know that". (Emphasis added.)

Wallace's second issue in seeking a COA was whether his "attorneys" rendered ineffective assistance in violation of the Sixth Amendment (incorporated in the Fourteenth Amendment); his memorandum in support addresses whether *state counsel* rendered ineffective assistance during the guilty-plea stage in circuit court in 2012.

A judge on our court granted a COA for "whether the district court erred by dismissing [Wallace's] petition as time barred", ruling: "Wallace . . . demonstrated that jurists of reason could find the district court's determination that his § 2254 petition was untimely debatable", stating in support: "Although Mississippi law does not allow for direct review of a guilty plea conviction, Miss. Code Ann. § 99-35-10, it is unclear whether a criminal defendant who is sentenced after pleading guilty [in Mississippi] is entitled to the 90-day period to seek certiorari from the United States Supreme Court". As required for when a COA is granted for a procedural ruling, as discussed *infra*, the judge also addressed Wallace's constitutional claim: "[R]easonable jurists would debate whether Wallace has stated a valid claim of the denial of a constitutional right with respect to his claims that [state] counsel rendered ineffective assistance".

9

In addition, our court appointed Wallace counsel. He then filed his opening brief and included a second, alternative issue: whether this court should remand so that he may present his equitable-tolling challenge without conflicted counsel. He asserted: under *Christeson*, 574 U.S. at 373, it was a conflict of interest for district-court counsel to have asserted equitable tolling applied because of her own actions; and district-court counsel misled Wallace due to a payment dispute. Wallace added it was unclear whether his COA extended to this alternative issue; as a result, he moved to expand the COA to cover it.

Our court ordered the motion carried with the case, and, *inter alia*, directed Wallace to file a supplemental brief regarding expanding the COA.

II.

For the following reasons, Wallace prevails on the 90-day-period issue. Therefore, as stated *supra*, we need not consider his equitable-tolling issue, including whether to expand the COA.

For purposes of determining whether Wallace filed timely his habeas petition, only one date is at issue: the day when his judgment became final and, therefore, when the one-year period began running. Wallace contends: because he was entitled to seek direct review by the Supreme Court of his state-court judgment, the district court committed *reversible plain error* by concluding his judgment became final on the filing of his Order of Sentence, instead of when the subsequent 90-day period expired (finality conclusion).

The State counters, *inter alia*, that Wallace's judgment became final on the filing of his Order of Sentence in 2013, asserting, pursuant to 28 U.S.C. § 1257(a), that he was not entitled to seek direct review by the Court: it would have lacked jurisdiction over Wallace's claims because the circuit court was not the highest state court in "which a decision could [have been]

No. 20-60098

had"; and, even if it was, the Court would have lacked jurisdiction to review federal claims raised for the first time in a petition for writ for certiorari.

### A.

The threshold inquiry for our court is whether we may consider Wallace's claim that his judgment became final upon the 90-day period's expiration because Wallace did not raise the claim either in district court after the State and the MJ used for finality the date the Order of Sentence was filed, or in his *pro se* motion in our court for a COA.

As noted, our court, through a single judge, granted Wallace the COA on the claim. But, "because a ruling by a motions judge in the initial stages of an appeal is not binding on the later merits panel, we have the responsibility to determine whether the [COA granting review of this claim] is valid". *Black v. Davis*, 902 F.3d 541, 544 (5th Cir. 2018) (reviewing whether our court's grant of COA on issues not presented in district court valid).

### 1.

AEDPA in 1996 introduced both "simple logic" to the federal habeas landscape, *Smith v. Titus*, 141 S. Ct. 982, 987 (2021) (Sotomayor, J., dissenting from denial of cert.), and uniform rules for federal courts to apply, *Day v. McDonough*, 547 U.S. 198, 202 n.1 (2006) (referring to uniformity of AEDPA's one-year period). Namely, it implemented a host of greatly needed procedural requirements for petitioners seeking habeas relief. *See Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (noting "[i]n many ways, [AEDPA] represented a sea change in federal habeas law"). One such requirement, pursuant to 28 U.S.C. § 2253(c), is obtaining a COA—an

extension of the former requirement for state prisoners to obtain a certificate of probable cause. *Black*, 902 F.3d at 544 n.1.

The COA requirement is to "oblig[e] applicants to make a threshold showing before their cases are aired out on appeal", and, therefore, "serves an important screening function and conserves the resources of appellate courts". *Medellin v. Dretke*, 544 U.S. 660, 678 (2005) (O'Connor, J., dissenting); *United States v. Castro*, 30 F.4th 240, 244 (5th Cir. 2022) ("In short, the COA requirement serves a gatekeeping function."). This goes hand in hand with Congress' intent in passing AEDPA: "to further the principles of comity, finality, and federalism", *Williams v. Taylor*, 529 U.S. 420, 436 (2000); and "to curb the abuse of the statutory writ of habeas corpus", *Graham v. Johnson*, 168 F.3d 762, 780 (5th Cir. 1999) (citation omitted).

Obtaining a COA from either the district court or our court is a jurisdictional prerequisite to our court's considering an appeal in habeas. *Gonzalez v. Thaler*, 565 U.S. 134, 140 (2012) (quoting 28 U.S.C. § 2253). Our court generally lacks jurisdiction to issue a COA for a claim that was not raised in district court. *Black*, 902 F.3d at 544–47. Moreover, the district court must first deny a COA before petitioner may seek one from our court. *E.g.*, *Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1998); *Black*, 902 F.3d at 543. In that regard, as was done in this instance, it is "perfectly lawful" for a district court *sua sponte* to deny a COA before petitioner seeks one in that court, as § 2253(c) does not require petitioner to make such request, stating only "that an appeal may not be taken without a [COA's] having been issued". *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (citing 28 U.S.C. § 2253).

As reflected *supra*, to obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right". 28 U.S.C.

§ 2253(c)(2); *Slack*, 529 U.S. at 483–84.   This requires showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong".  *Slack*, 529 U.S. at 484.  The inquiry is "limited to a threshold examination that 'requires an overview of the claims in the habeas petition and a general assessment of their merits'". *Smith v. Dretke*, 422 F.3d 269, 273 (5th Cir. 2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

And, as was also done in this instance, if the district court in ruling on issuance of a COA denies relief on procedural grounds, an additional element is added:  petitioner must demonstrate not only that "jurists of reason would find it debatable whether the [§ 2254] petition states a valid claim of the denial of a constitutional right", but also that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling". *Slack*, 529 U.S. at 484–85.

Our court has made limited exceptions to the understandable requirement that petitioner must raise a claim in district court before he can receive a COA on that claim from our court.  An example is provided by *Callicut v. Quarterman*, 246 F. App'x 247 (5th Cir. 2007), which is factually similar to this case.  The district court dismissed Callicut's § 2254 petition as time barred after Callicut had submitted a document to the court reflecting that his petition had been filed timely.  *Id.* at 248.  At issue was whether our court lacked jurisdiction to consider his appeal because "[he] did not specifically argue in his COA motion to the district court that [its] finding concerning the date that his state habeas application was filed was incorrect". *Id*.

Our court held it had jurisdiction "because the district court implicitly considered the issue when it denied Callicut's COA motion".  *Id.*  (citing *Whitehead*, 157 F.3d at 387–88).  The decision in *Callicut* finds support in

"the *existence* of a COA [being] a 'jurisdictional prerequisite' to an appeal", but "the *content* of the COA required by § 2253(c) [being] 'a mandatory but nonjurisdictional rule'". *United States v. Smith*, 945 F.3d 860, 863 (5th Cir. 2019) (emphasis in original) (quoting *Miller-El*, 537 U.S. at 336, and *Gonzalez*, 565 U.S. at 154).

Another example is in *Reece v. Johnson*, 208 F.3d 1006 (Table), 2000 WL 177900 (5th Cir. 18 Jan. 2000). Reece, challenging the denial of his § 2254 petition as time barred by AEDPA's one-year period, moved *pro se* for our court to issue a COA. *Id.* at *1. Our court granted the COA, noting the district court misapplied the mailbox rule in its timeliness calculation, in the light of a decision issued after the district court's ruling. *Id.*

Reece's COA motion to our court, however, did not raise that error but instead asserted "state action impeded him from timely filing his § 2254 [petition]". *Id.* Our court reasoned that, because Reece's challenge was based on the calculation of AEDPA's limitations period and his state habeas application's filing date, his *pro se* COA motion "should be *liberally construed* as alleging the identified errors". *Id.* (emphasis added).

Consistent with the district court's *sua sponte* denial of a COA when Wallace had counsel, with our required liberal review of Wallace's *pro se* motion for a COA in our court, *e.g.*, *id.*; *United States v. Comeaux*, 811 F. App'x 887, 887–88 (5th Cir. 2020), and the analyses in *Callicut* and *Reece*, our court has jurisdiction to consider Wallace's claim that his judgment became final upon the 90-day period's expiration. In that regard, the 90-day period was referenced in district court at least three times.

First, in response to the State's motion to dismiss, Wallace's district-court counsel explained that she relied on her "past experience and did not realize that the *ninety days allowed for United States Supreme Court review*

*applied only to cases on direct appeal* and not to cases like Wallace's that were on post-conviction". (Emphasis added.)

Second, the R & R notes "[Wallace's district-court] counsel argues that she was not aware the *90 days allowed for United States Supreme Court review applied only to cases on direct appeal* and not to cases on post-conviction review". (Emphasis added.)

And, third, Wallace's objection to the R & R's recommending denial of equitable tolling includes district-court counsel's different explanation for why she missed the filing deadline: "Wallace should not be penalized because of [district-court] counsel's failure to realize that *the ninety days for seeking certiorari review with the United States Supreme Court appl[i]es only on direct appeal and not to a petitioner who had pleaded guilty and, therefore, has no direct appeal*". (Emphasis added.) (At long last, the issue at hand, for which our court subsequently granted a COA, was at least approached, though not stated precisely.)

Although Wallace's district-court counsel stated, for various reasons, she misunderstood how, and if, the 90-day period applied to Wallace, the possibility of Wallace's judgment becoming final upon the 90-day period's expiration was still brought to the district court's attention. For example, the district court reviewed the objection to the R & R and adopted the R & R. As in *Callicut*, 246 F. App'x at 248, it can be said the district court "implicitly considered" the issue when both dismissing Wallace's petition as time barred and denying *sua sponte* a COA on procedural grounds.

Moreover, Wallace generally challenged the district court's finality conclusion in his *pro se* motion for a COA to our court, also noting that, due to a payment dispute, district-court counsel "failed to file a timely habeas corpus application or brief in support which resulted in dismissal for procedural bar". Wallace's attachment to his motion, the email from district-

court counsel to Wallace's mother, included:  "[Wallace]'s case was dismissed because I missed the deadline – there was no extra 90 days for persons who pleaded guilty.  I had never filed a habeas [petition] from a guilty plea before and did not know that".  Accordingly, his *pro se* COA motion can be liberally construed to include a claim that his judgment did not become final until expiration of the 90-day period.  *Reece*, 2000 WL 177900, at *1.

Although a merits panel can overturn a single-judge ruling on a motion for a COA, consideration should be afforded that judge's analysis.  In this instance, it appears the motions judge deemed the 90-day-period issue sufficiently raised in district court and our court.

2.

Our holding we have jurisdiction through our court's COA to consider when Wallace's judgment became final prompts our determining our standard of review.  Arguably, because Wallace has a COA from our court for, *inter alia*, the procedural 90-day-period issue, review is *de novo*.  *E.g.*, *Giesberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir. 2002).  On the other hand, because Wallace did not object to the R & R's recommending Wallace's habeas petition was untimely and did not contest expressly the district court's finality conclusion, review is arguably only for plain error.  *Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008) (in habeas proceeding, reviewing claim for plain error because party failed to raise it as objection to R & R).

As noted *supra*, in adopting the R & R, the district court did not state it had made an independent review of the record.  Therefore, regarding the R & R, it has long been established that, when the district court has not made an independent review of the record, *e.g.*, *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017), failure to object to an issue in the R & R, when warned of the requirement to file timely objections, results in plain-error review applying to that issue when raised in our court.  *Douglass*

*v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc) (holding "party's failure to file written objections to the proposed findings, conclusions, and recommendation in a [R & R] . . . after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object"), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1); *Alexander*, 875 F.3d at 248 ("When a party who is warned of the requirement to file timely objections to a [R & R] fails to file any such objections, and the [MJ's] factual findings and legal conclusions are accepted by the district court, our review is for plain error".). Wallace was so warned in the R & R.

Of considerable interest, and as noted *supra*, Wallace's appointed counsel states plain-error, rather than the less restrictive *de novo*, review applies; but, no authority need be cited for the well-established rule that we, not the parties, decide which standard of review to employ. Wallace prevails under either standard of review, as shown *infra*. Therefore, it is not necessary to decide which of the two standards of review applies. In the light of the failures to present in district court the specific issue permitted by the COA granted Wallace by our court, we assume, without deciding, that review for this civil proceeding is for plain error. *Hernandez v. Thaler*, 630 F.3d 420, 424 (5th Cir. 2011) (stating "[h]abeas proceedings are civil actions"); *Starns*, 524 F.3d at 617 (as stated *supra*, reviewing claim in habeas proceeding for plain error); *Alliance for Good Gov't v. Coalition for Better Gov't*, 998 F.3d 661, 673 n.4 (5th Cir. 2021) (Dennis, J., dissenting) ("Decades ago, our Court . . . adopted the practice of reviewing unpreserved error in a civil case using the plain-error standard of review". (citation omitted)); *Douglass*, 79 F.3d at 1424 ("Although the Federal Rules of Civil Procedure do not contain a plain error rule, our court has applied the plain error standard of [Federal Rule of

No. 20-60098

Criminal Procedure] 52(b) in civil cases".).  Such application of plain-error review finds support in Federal Rule of Civil Procedure 51(d)(2), which permits "[a] court [to] consider a plain error in the [jury] instructions" that was not properly preserved under the rule, "if the error affects substantial rights".

Reviewing pursuant to the plain-error standard demonstrates fully why Wallace prevails on the finality issue.  In addition, our assuming review is for plain error imposes the more restricted and difficult review upon Wallace, especially when, as noted, he would prevail under our less difficult *de novo* review for the issue of law at hand.  Nevertheless, we assume plain-error, rather than *de novo*, review applies to highlight, enforce, and protect the importance, for numerous obvious reasons, of properly preserving an issue in district court.  *E.g.*, *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012) ("The purpose of plain error review is to instill in litigators the importance of preparing adequately before appearing in the trial court and, as necessary, clarifying issues to that court.  Timely, adequate objections allow the trial court to rule in the first instance and, if necessary, correct itself without spawning an appeal.  This standard usually shields the district court from reversal because of error that was unwittingly committed, because not brought to its attention.  The standard also shields this court from ruling on issues that have been insufficiently vetted below.  Plain error review implicitly acknowledges that, in many cases, an appeal represents the triumph of hindsight, as a party attempts to shore up objections ineffectively lodged in the trial court, or not lodged at all, by adducing after-the-fact support for its position."); *United States v. Delgado*, 672 F.3d 320, 332 (5th Cir. 2012) (en banc) ("It is worth reiterating that the limitations imposed by the plain-error test promote important judicial policies.  With respect to unpreserved errors, these limitations serve to induce the timely raising of claims and objections, which gives the district court the opportunity to

consider and resolve them". (citation omitted)); *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005) (noting prejudice prong enforces policies underpinning Federal Rule of Criminal Procedure 52(b): "to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error" (citation omitted)). *See also United States v. Olano*, 507 U.S. 725, 732 (1993) ("Although a rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . the rules of fundamental justice, the authority created by Rule 52(b) is circumscribed". (citation and alteration omitted)).

Under the plain-error standard, Wallace must show for reversible plain error: (1) a forfeited error; (2) that was plain (clear or obvious error, rather than one subject to reasonable dispute); and (3) that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009); *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017) (citing *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc)). And (4), if he makes that showing, we have the discretion to correct the reversible plain error, but generally should do so only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings". *Puckett*, 556 U.S. at 135 (citation omitted); *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 488 (5th Cir. 2000).

## B.

For the following reasons, the district court committed reversible plain error for the finality issue. And, applying our discretion for the fourth

No. 20-60098

and final step of plain-error review, we hold the error requires vacating the judgment of dismissal and remanding for further proceedings.

1.

As noted *supra*, the first of the four steps in plain-error review is whether the issue was forfeited, as opposed to being waived. It was not waived because Wallace did not "intentionally relinquish[] or abandon[]" in district court his claim on appeal (as allowed by our court's COA) that his judgment became final when the 90-day period expired. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018).

This is reflected by district-court counsel's shifting positions on the finality issue and claiming negligence in not filing the § 2254 petition timely. Therefore, Wallace "forfeited the claim of error" by failing to raise the finality issue in district court. *Puckett*, 556 U.S. at 138 (emphasis omitted); *see also Douglass*, 79 F.3d at 1420 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (quoting *Olano*, 507 U.S. at 733)).

2.

For the next step, the district court's concluding Wallace's judgment became final on the date his Order of Sentence was filed is "clear or obvious" error because, as referenced *supra* and discussed *infra*, it is "not subject to reasonable dispute". *Puckett*, 556 U.S. at 135; *United States v. Davis*, 967 F.3d 441, 442 (5th Cir. 2020). As noted *supra*, in addition to the COA requirement, AEDPA imposes the one-year period for an individual in custody pursuant to a state-court judgment to file a § 2254 petition for habeas relief. 28 U.S.C. § 2244(d). The one-year period begins running from the latest of four events. *Id.* As stated, Wallace's challenge relies on the following from the four: "the date on which the [state] judgment became

final by *the conclusion of direct review or the expiration of the time for seeking such review*". *Id.* at § 2244(d)(1)(A) (emphasis added).

For determining such finality of a state-court judgment, "the *conclusion* of direct review" and "the *expiration* of the time for *seeking* such review" obviously refer to "distinct categor[ies] of petitioners". *Gonzalez*, 565 U.S. at 150 (emphasis added). The first category applies to those who pursued direct review from the Court. *Id.* In that instance, "the judgment becomes final at the conclusion of direct review" when the Court "affirms a conviction on the merits *or denies a petition for certiorari*". *Id.* (emphasis added).

The second category refers to petitioners, like Wallace, who did not seek direct review. In that instance, "the judgment becomes final at the 'expiration of the time for seeking [direct] review' . . . when the time for pursuing direct review in [the] Court, or in state court, expires". *Id.*; *see also Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). In other words, if petitioner may pursue direct state-court review, but does not, his conviction becomes final when the time for seeking such review expires. *See Roberts*, 319 F.3d at 693–94.

This case, however, turns on when petitioner *could* seek direct review by the Court. As noted and discussed *infra*, the Court may review a final state-court judgment if, *inter alia*, it is "rendered by *the highest court of a State in which a decision could be had*". 28 U.S.C. § 1257(a) (emphasis added). In that instance, AEDPA's finality provision accounting for "time for seeking such review" includes the 90-day period for filing a petition for writ of certiorari. *Lawrence*, 549 U.S. at 333; *Roberts*, 319 F.3d at 694; Sup. Ct. R. 13(1). At issue is whether Wallace was entitled to pursue direct review by the Court during the 90-day period from the date of his judgment (6 June 2013).

a.

As noted *supra*, the State, pursuant to 28 U.S.C. § 1257(a), primarily contends:   in the district court's finality conclusion, there was *no error*.  In other words, the State for its primary bases of support does not rely upon the less arduous element for it in plain-error review:  that there was no clear or obvious error.

Section 1257(a) provides:

Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where . . . any . . . right . . . is specially set up or claimed under the Constitution or the treaties or statutes of . . . the United States.

The State maintains that, for purposes of triggering the one-year period, Wallace's judgment became final on the date of his Order of Sentence being filed in 2013, not after the 90-day period:  direct review by the Court was not permitted because the Mississippi trial (circuit) court was not "the [requisite] highest court of [Mississippi] in which a decision could [be] had";  and, even if it was, the Court would have lacked jurisdiction to review any federal claims raised by Wallace in a petition for writ of certiorari because he did not raise such claims in state (circuit) court.

i.

As for the State's first ground, the "highest court . . . in which a decision could be had" is the "state court of last resort".  *Gonzalez*, 565 U.S. at 154.  In that regard, the state-court judgment must be:  "subject to no further review or correction in any other state tribunal"; and "the final word of a final court".  *Mkt. St. Ry. v. R.R. Comm'n*, 324 U.S. 548, 551 (1945).

The "state court of last resort" can, of course, be a court other than the highest in the State. *E.g.*, *Grovey v. Townsend*, 295 U.S. 45 (1935) (on writ

of certiorari to Texas justice court); *Canizio v. New York*, 327 U.S. 82, 84–85 (1946) (holding jurisdiction existed to consider appeal from New York county court on denial of writ of *coram nobis* because state law did not permit appeal to higher court); *Bates v. Sec'y Dep't of Corr.*, 964 F.3d 1326, 1329 (11th Cir. 2020) (concluding Florida intermediate appellate court was "court of last resort" because Supreme Court of Florida jurisdictionally barred from reviewing unelaborated *per curiam* opinion).

The State contends: because Wallace could pursue *state post-conviction review*, the trial (circuit) court was not the "state court of last resort". Not so.

First, 28 U.S.C. § 2244(d) distinguishes between direct and collateral review: again, the one-year period begins running at the expiration of time to seek *direct review*; and "the time during which a properly filed application *for State post-conviction or other collateral review* with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection [(d)]". 28 U.S.C. § 2244(d) (emphasis added); *Wall v. Kholi*, 562 U.S. 545, 547 (2011) (holding "the phrase 'collateral review' in § 2244(d)(2) means judicial review of a judgment in a proceeding that is *not* part of direct review" (emphasis added)). At issue here, in determining whether the 90-day period applies, is whether the period for *direct* review, not *collateral* review, expired. *See Roberts*, 319 F.3d at 694.

Moreover, the State's contention that the trial court was not the "state court of last resort" is inconsistent with its position that Wallace's judgment became final when his Order of Sentence was filed. Along that line, the State concedes: under Mississippi Code Annotated § 99-35-101, Wallace's judgment was final because he could not appeal his guilty plea and sentence to a higher Mississippi court. As such, Wallace's guilty-plea conviction was "the [requisite] final word of a final [Mississippi] court".

*Mkt. St. Ry.*, 324 U.S. at 551. The command of *Roberts*, therefore, is clear: the 90-day period for seeking a writ of certiorari from the Court was available to Wallace and was triggered when the judgment was filed after sentencing.

### ii.

For its second primary ground, the State relies on 28 U.S.C. § 1257(a)'s requiring the claim for which review by the Court is requested to be "under the Constitution or the treaties or statutes of the United States" (federal-law claim). The State asserts that, under § 1257(a), the Court could not review a federal-law claim raised for the first time in a petition for writ of certiorari: the "Court has almost unfailingly refused to consider any federal-law challenge to a state-court decision unless the federal claim was either addressed by or properly presented to the state court that rendered the decision [it has] been asked to review", *Howell v. Mississippi*, 543 U.S. 440, 443 (2005); and no federal-law claims were presented to the circuit court, nor decided by it.

The State, however, cites no decisions supporting its position that the 90-day period would not apply because the Court would have lacked jurisdiction to review federal-law claims raised by Wallace for the first time in seeking direct review of his guilty plea. More to the point, § 2244(d)(1)(A) imposes no requirement that, for the 90-day period to apply, the Court must have jurisdiction over a petition for writ of certiorari, if filed.

And, as discussed *supra*, Wallace did raise a Fourth Amendment claim, applicable to the States through the Fourteenth Amendment, in circuit court before he pleaded guilty. Moreover, he later contended in his state-court post-conviction proceeding that the circuit court declined to consider the challenge unless he proceeded to trial. Who is to say that claim, as well as that ruling, could not have been raised as Fourteenth Amendment claims in a petition for writ of certiorari?

No. 20-60098

In addition, in instances following a guilty plea and sentence in a Mississippi state court in which, as here, direct review is not requested from the Supreme Court, how would a federal district or circuit court in a habeas proceeding determine whether, for purposes of the Supreme Court's having jurisdiction *vel non* to consider a petition for writ of certiorari, a federal-law claim had been raised adequately in the Mississippi state court, or would be otherwise sufficient to ensure jurisdiction for review by the Court?  Such inquiry and conjuncture fly in the face of the certainty in procedures and rules AEDPA in part was enacted to achieve.

Our court's decisions analyzing when the 90-day period applies support that we need not look to whether the Court *would* have jurisdiction over a petition for writ of certiorari, if filed.  For example, in *Flanagan v. Johnson*, our court:  considered whether dismissal as time barred of a petition for habeas relief from a Texas state-court judgment resulting from a jury conviction was proper; and noted that, because petitioner (who pursued unsuccessfully direct state-court review) did not seek a writ of certiorari from the Court, his conviction became final 90 days after the judgment following appeal was entered.  154 F.3d 196, 197 (5th Cir. 1998) (citing *Caspari v. Bohlen*, 510 U.S. 383 (1994) (discussing finality in the context of *Teague* nonretroactivity)).  Our court did not address whether the Court *would have had* jurisdiction had a petition for writ of certiorari been filed.  *Id.*

b.

Accordingly, the State's two primary bases for the 90-day period's not being applicable fail.  But, in this instance, because plain-error review applies, the underlying error must be more than simply an error, it must be "plain":  "clear" or "obvious".  Along that line, the State contends:  because our court has not addressed previously whether, under Mississippi law, the judgment of defendant who pleaded guilty and was sentenced became final upon the

25

90-day period's expiration, the district court's error was not clear or obvious. (The State belatedly raised this issue in a Rule 28(j) letter after oral argument in our court. The issue warrants consideration because the letter relies upon an opinion issued after oral argument and the issue is a necessary inquiry for plain-error review.)

In that regard, our court will "*ordinarily* [] not find plain error when [it has] not previously addressed an issue. Even where the argument requires only extending authoritative precedent, the failure of the district court cannot be plain error". *United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009) (emphasis added) (citation omitted); *see also United States v. Ellis*, 564 F.3d 370, 377–78 (5th Cir. 2009) (explaining why our court did not decide whether there was "any error at all" because, *inter alia*, lack of clarity in the law rendered any such error less than "plain").

Our court has held an error "clear or obvious", however, when the result was plainly dictated by relevant laws and decisions. *E.g.*, *United States v. Insaulgarat*, 378 F.3d 456, 471 (5th Cir. 2004) (holding court plainly erred because claim at issue "clearly and plainly follow[ed]" from direct language of, *inter alia*, Sentencing Guideline, statute, and decisions construing Guideline); *see also United States v. Spruill*, 292 F.3d 207, 215 & n.10 (5th Cir. 2002) ("The fact that the particular factual and legal scenario here presented does not appear to have been addressed in any other reported opinion does not preclude the asserted error in this respect from being sufficiently clear or plain to authorize vacation of the conviction on direct appeal.").

Wallace's judgment becoming final upon the 90-day period's expiration clearly flows from § 2244(d)(1) and our court's prior decisions applying that statute, such as in *Roberts*, 319 F.3d at 694. Unlike in *Evans*, such a conclusion does not expand § 2244(d)(1)'s application. 587 F.3d at 667. To hold otherwise is to turn a blind eye to both a needed bright-line rule

compelled by the plain wording of § 2244(d)(1) and one of the underlying goals of AEDPA: to provide uniform rules to ensure certainty in procedural requirements for federal habeas relief. (Though not discussed by the parties, it appears, by our independent research, that only one other State statutorily imposes such broad restrictions as Mississippi. *See* Ariz. Rev. Stat. § 13-4033(B) ("In noncapital cases a defendant may not appeal from a judgment or sentence that is entered pursuant to a plea agreement or an admission to a probation violation.").)

3.

For the next step in plain-error review, the error obviously affected Wallace's substantial rights because it precluded his pursuing federal habeas relief on the merits. *See Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (noting, in the context of equitable tolling, dismissal of first habeas petition "is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty"); *Price v. City of San Antonio*, 431 F.3d 890, 894 (5th Cir. 2005) (holding appellant's substantial rights were affected by "dismissal with prejudice . . . because it resulted in the permanent loss of . . . claims"), *abrogated on other grounds by Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 391–92 (5th Cir. 2020).

4.

Having held the first three steps of plain-error review are satisfied, we hold the district court's error requires reversal because it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings". *Puckett*, 556 U.S. at 135 (citation omitted). At hand is whether Wallace, a state prisoner, may pursue habeas relief at all. Foreclosing judicial review of a habeas petition on the ground it was filed untimely, when it was not, undermines "the public legitimacy of our justice system[, which] relies on

No. 20-60098

procedures that are neutral, accurate, consistent, trustworthy, and fair". *Rosales-Mireles*, 138 S. Ct. at 1908 (citation omitted). And, because the district court's finality conclusion resulted from error in applying AEDPA's limitations period, it may now be easily corrected. *See id.*

## III.

For the foregoing reasons, the dismissal of Wallace's habeas petition is VACATED; and this matter is REMANDED to district court for further proceedings consistent with this opinion. (Accordingly, it is not necessary to consider Wallace's motion to expand the COA.)